Certificate of
the publication against
an absent defendant, must
appear, by
the certificate or otherwise, to have
been made by
the editor or
publisher.

</div>

There is also, an irregularity in decreeing over against the defendant Freeman, in favor of his co-defendant, not only because the decree is for too much by the aforesaid ten dollars, for which the injunction was perpetuated beyond what it ought to have been; but also because the order of publication against the defendant Freeman, to answer the answer of his co-defendant, his assignee, is certified to have been inserted in the public paper by some person, who is not stated by himself, or proved in the record, to be the editor or publisher of the paper, and according to former decisions, such proof of publication is insufficient.

The decree is therefore reversed with costs, and cause remanded, with directions for such proceedings and decree as shall not be inconsistent with this opinion.

*Turner* for plaintiffs; *Breck* for defendant.

---

<div style="margin-left:auto">

EJECTMENT.

Case 49.

May 6.

Statement.

</div>

## Blight's lessee vs. Atwell &c.

Error to the Hardin circuit; PAUL I. BOOKER, Judge.

*Evidence. Practice. Error. Taxes. Forfeiture.*

Judge OWSLEY delivered the Opinion of the Court.

THIS writ of error is prosecuted to reverse a judgment rendered in favor of the defendants in error, on the trial of an ejectment, which was brought against them by the plaintiff in error, in the Meade circuit court.

By the notice attached to the declaration, the defendants, who were tenants in possession of the land,

were warned to appear and make themselves de- BLIGHT'S
fendants at the September term, 1824. They ac- LESSEE
cordingly appeared at that term, entered into the ATWELL &c.
common rule, caused themselves to be made defend-
ants, and pleaded the general issue.

The suit was afterwards moved, by change of
venue, to the circuit court of Hardin; and at the
March term, 1825, of the Hardin court, the follow-
ing entry was made upon the order book, to-wit:
"At this day came the defendants in this cause, and
say that they rely on the further facts, that the les-
sor in said cause has not listed for taxation, nor
have the taxes been paid on the land claimed by the
plaintiff in said suit."

At the June term, 1826, the issue made up by the
parties was tried by a jury, and after various instruc-
tions were given and refused, a verdict in conformi-
ty with the judgment rendered by the court, was
found for the defendants.

The title claimed by the plaintiff is derived in
the following manner:—

Under a patent from the State of Virginia for one
hundred and thirteen thousand four hundred and
eighty-two acres, to Banks and Claibourne, dated in
1785:

The deed of the patentees, Banks and Claibourne,
to Delormerie, dated in 1799, and the deed of Delor-
merie to the lessor, Blight, dated 1809.

The original deed of Banks and Claibourne to Where there
Delormerie, was not produced on the trial in the cir- is no objec-
cuit court; but without objections to its competen- tion made,
cy, a copy of a copy of that deed was used in evi- the copy of a
dence, and all the questions which were made by the deed read in
defendants and decided by that court, seem to have evidence has
been predicated upon the admission by the defend- the same ef-
ants, that by the evidence introduced and used be- original.
fore the jury, the plaintiff had shown a conveyance
of the title from the state of Virginia, down to the
lessor Blight.

A different course, has however, been taken in ar-
gument by the counsel of the defendants in this court.
2 I

BLIGHT'S
LESSEE
vs.
ATWELL &c.

It is contended by him that the writ of error has brought the whole of the proceedings before the court; and as it appears that the copy of a copy of the deed from Banks and Claibourne to Delormerie, and not the original deed, was the only evidence produced by the plaintiff to prove a conveyance of the title from Banks and Claibourne, it was argued that the court must perceive that the plaintiff failed to prove title in the lessor, Blight, by the best and only competent evidence; and hence it is insisted, that from the whole record it is apparent that the plaintiff showed no right to recover, and that judgment should consequently be rendered against him in this court.

Were it true that from the record the title is shown not to be in Blight, there would be some plausibility in the argument urged by the counsel for the defendants. The writ of error has no doubt brought the whole record before the court, and it would seem to be doing a vain and useless thing to reverse the judgment and remand the cause to the court below for further proceedings, if from the face of the record, the plaintiff was shewn to have no title to the land in contest, and could not, therefore, succeed in recovering judgment. But the record shows no such case. It shews that to prove title in the plaintiff, evidence not of the highest dignity, but of inferior grade was used on the trial, but it was used without objection on the part of the defendants, and they may have failed to raise any objection to the evidence, not because they supposed that if used, the evidence would be of no avail to the plaintiff, but because they may have been convinced that if objections were made to the competency of the evidence, the objections, might and would be obviated by other evidence in the power of the plaintiff. It would, therefore, not only be palpably unjust, but contrary to the settled course of adjudications in this court, to allow objections for the first time to be taken in this court to the competency of evidence used on the trial in the court below, and to pronounce judgment against an unsuccessful plaintiff in the court below, because he has not proved title by the best possible evidence.

With these remarks we will leave the argument used by the counsel of the defendants in this court, and proceed to notice the questions raised by the assignment of errors.

It appears from the copy used in evidence by the plaintiff, that the deed from Banks and Claibourne to Delormerie, was not recorded or lodged in the proper office to be recorded, in the time prescribed by law to make it valid against creditors or subsequent purchasers, without notice; and on the trial in the circuit court, an effort was made, on the part of the defendants, to defeat the plaintiff's title, by proving, that since the date of their deed to Delormerie, Banks and Claibourne have conveyed the same land to Thomas Lewis.

The deed from Banks and Claibourne to Lewis was used in evidence, but whether or not before he received the deed, Lewis had notice of the deed which had been previously made by them to Delormerie, was not expressly proved, nor was there any evidence conducing to prove that the defendants held the land under Lewis by contract or otherwise.

The court instructed the jury that the title of the land passed to Lewis by the deed which was made to him from Banks and Claibourne, if before or at the time of receiving that deed, Lewis had no notice of the deed to Delormerie, and that it was incumbent on the plaintiff to prove that Lewis had notice.

In thus permitting the title derived by the lessor of the plaintiff, under the prior deed of Banks and Claibourne to Delormerie, to be assailed through the instrumentality of the subsequent deed from Banks and Claibourne to Lewis, we think the court most clearly erred. Though not recorded within the time prescribed by law, the deed to Delormerie is not absolutely and utterly void to all intents and purposes. It is inoperative as to the creditors and purchasers of the vendors without notice, and it may be so as to others holding in privity under them; but with respect to the rest of the world, the omission to record the deed in due time, forms no objection

BLIGHT'S LESSEE vs. ATWELL &c.

Prior unrecorded deed is valid against all except purchasers and creditors, and their privies. Hence a defendant in ejectment cannot read a subsequent deed to show title out of the lessor, without showing he holds under it.

BLIGHT'S
LESSEE
vs.
ATWELL &c.

to its validity and sufficiency to pass the title to the vendee.

It would therefore seem to follow, that none other except such as to whom the deed is inoperative, can be allowed to object to the deed and draw in question its validity, on the ground of its not having been recorded. There is no possible reason for permitting a stranger to the deed to object to its validity, that would not apply with equal force in favor of a stranger, whose interest is not affected by a fraudulent deed, taking advantage of the fraud; and it has been repeatedly held, both by the courts of England and this country, in the exposition of the statutes against fraudulent conveyances, that to enable a person to draw in question the validity of a deed alledged to be fraudulent, he must show himself to be either a creditor or purchaser, as to whom such deeds are declared by the statutes to be void.

The court below should not therefore have suffered the defendants, without shewing themselves to hold in privity of Lewis, to attack the validity of the deed to Delormerie, on the ground of its not having been recorded in proper time.

Effect of the
Register's
sale and
deed.

An effort was also made at the trial, to defeat the plaintiff's right to recover, by the defendant's introducing as evidence a deed made by the register of the land office to Charles Helm, in 1809. That deed purports to have been made under a sale of the land for taxes, describes a boundary conforming with that contained in the deed to Delormerie, and including upwards of twenty thousand acres. There is some uncertainty as to the precise quantity of acres actually sold by the Register, and in pursuance of which sale the deed was intended to be made. It became however a question of some consequence, to ascertain the true quantity of acres sold, in the case of Blight's heirs against Banks &c. at the last term of this court, and it was there decided not to exceed nineteen hundred acres; and without again travelling over the ground then explored, to prove that to be the quantity of acres sold, we would refer to the opinion then delivered, to prove its correctness: See 6 Monroe. The validity of the

deed made by the Register was also a question then contested, and without expressing an opinion, whether or not it passed the title for the nineteen hundred acres thereon directed to be laid off, it was decided not to be of any validity for the residue of the land contained in its boundary. We may therefore, without further remarks upon that deed, with propriety refer to the opinion in that case, as being conclusive as to every material point growing out of the deed in this case. For the land now in contest appears not to be included within the nineteen hundred acres sold by the Register, and as the Register's deed has been decided not to have conveyed the title to any part of the residue of the tract, it is evident that no obstacle is presented to the plaintiff's right to recover, by any thing contained in that deed.

Several other questions were made and decided in the court below, but they seem all to resolve themselves into the enquiry, whether or not it was incumbent on the plaintiff to prove on the trial in that court, that in all past time the taxes due to the State on the land had been actually paid by Blight, and those through whom he derived title.

If such proof was necessary to be made, it must have become so by force of the ninth section of the act of assembly of this State, which was approved the 12th of January, 1825, after the commencement of the plaintiff's action. Before the date of that act, there was no law which, according to any fair interpretation, can have required the production of such evidence, and none which would even have tolerated an inquiry into matter so impertinent and irrelevant to the issue. By the ninth section of that act, it is however provided:

"That upon the trial of every cause, either at law or in chancery, now depending or hereafter to be commenced in any of the *courts of the United States,* for the recovery of the possession or seizin of any land in this State, the defendant or defendants shall have the liberty to put in issue the fact that the taxes have not been paid on said land, to a period at least within one year of the time of trial; and upon

BLIGHT's LESSEE vs. ATWELL &c.

The 9th sec. of the act of Jan. 1825, allowing the defendant in ejectment to put in issue, that the taxes have not been paid on the land, applies to cases in the federal and not to the state courts.

BLIGHT'S
LESSEE
vs.
ATWELL &c.

the court or jury, according to the tribunal which shall try the fact, finding that the taxes have not been paid as above stated, the said land then in suit, so far as respects the title of the plaintiff, demandant or complainant, shall, that instant, be forfeited and vested in this State, absolutely and unconditionally, without any further finding."

Now it is evident that this section of the act, has no application to trials in the circuit courts of this State. It is to suits which were or might thereafter be depending in the *courts of the United States*, and not to courts of this State, that the section in express terms applies. The circuit courts of this State are not, either in fact or law, courts of the United States. They derive their existence and power from State authority, and are emphatically *courts of the State*, and not courts of the United States. It would therefore be in direct violation of the explicit language of the section, were we by construction to extend it to, and make it embrace, *courts of this State.* Such a construction cannot be adopted by this court.

The court below therefore erred in giving to the act a different construction.

It follows, that the judgment of the circuit court must be reversed with cost, the cause remanded to that court, and further proceedings there had, not inconsistent with this opinion.

*Talbot*, *Denny*, *Mayes*, and *Darby* for plaintiffs; *Bledsoe* for defendants.

---

CHANCERY.

Case 50.

May 7.

Statement of the facts.